Thank you, Your Honor. I'm Steve Larson. I represent, I'm counsel for the plaintiff appellants. May it please the court, I would like to focus the court's attention on the second amended complaint allegations because that is what is at issue on this appeal. It is appellant's position that defendants used a number of documents that had nothing to do with the allegations in the second amended complaint to persuade the district court that our case was about something different than what we alleged. That is improper under this court's precedent that we cited that I pronounce COJA. The crux of our case is that plaintiff's complaint alleges that defendants managed and administered the IBU plan contrary to the plan documents. The plan documents prohibited incurring an unfunded vested benefit. I'll call that a UBB. So everything in your complaint depends on that provision being a functional operative provision over the period that's within the gesture proposed period, right? Everything in our complaint. You're not alleging a different kind of breach of fiduciary duty, either simply an unwise investment strategy in general with that regard to what the plan said, or a breach of loyalty, or any other kind of fiduciary duty problem? Correct. We are alleging 19 different breach of fiduciary duty claims that all are based on the no UBB prohibition. Okay, so therefore, first of all, it might be useful to address the standing issue. Okay, as to the standing issue, that was never raised until this appeal. Right. And we agree that it's a creative argument raised by the defendants, but it relies on a Supreme Court case called Thole that is totally different than our case. And what this court did allow us to supplement the record, and that declaration makes clear that Mr. Fisher, the retirement month, once he retires, he's still an active participant. And that's, so far, one year of benefits plus 30% off two other years of benefits. And all 1,400 class members, whether they're a deckhand or a warehouse worker, you know, all these people are related to inland boatmen, tugboats, they all suffered the same damage. That loss is because of the because of the unfunded vested benefits, right? No, your honor. What is the origin of that loss? Origin of that loss is that these trustees allowed the plan to incur a UBB. If they would have stuck with the investment objective that the plan set forth, no UBB, then this plan wouldn't have incurred the egregious losses it had. But the same provision says, and if you do have a UBB, then you need to decrease benefits. So the, this is the biggest problem, actually, I have with your standing with your case, that the, as a standing matter, if everything depends upon not complying with the UBB and the clause, and the UBB clause recognizes that this goal may not be achieved, in which case you decrease benefits, which is what they did, then where's, what's the connection between the UBB requirement, even assuming it's still there somehow, most of it, and what happened? I think there's, you need to understand the distinction between a plan document that directs the trustees what they can and cannot do, and then ERISA regulations that are separate and employer pension plans, what they can and can't do. Well, but it isn't true, I mean, I have some background in this. It isn't true that multi-employer pension plans have to decrease benefits, they could increase contributions. That is true, and that is one of our clauses that what they should do is decrease benefits. Well, that is not only what we're saying, your honor, we have alleged that they clause said if there's a problem you should decrease the benefits, and this was obviously an employer-friendly clause, it was not a beneficiary-friendly clause. The reason for it was was really to save the employers, not the beneficiaries. Right, the beneficiaries did agree to it, at least the union did, because it would assure that the union members received benefits based on how much they worked, and the distinction I was trying to draw was that this no UVB provision is unique. We have not run across another provision there, and if you're just going to throw everything in, say that all multi-employer plans, the only rules that we say they do, and that no trust can set up its own rules, that's not how ERISA reads. ERISA says... You're being accusatory, and I don't have any advantage here at all, so... I apologize. Can you go back to Thole? Because I guess I'd like to hear more from you in terms of why you think this case is different than that one, and why you have standing whereas the plaintiffs in Sure, the Thole case is different for three reasons. In Thole, the plaintiffs had already retired. In our case, Mr. Fisher and none of the 1400 class members have retired. In the Thole case, the participants did not lose any benefits. In our case, Mr. Fisher and all 1400 class members have lost their future benefits. In the Thole case, the participants would not have been helped if they won the lawsuit. Their retirement benefits would not have changed. In this case, Mr. Fisher and every class members will be increased if we are successful in this case. How do... I would hope so, but why? I mean, that doesn't seem mandatory. Well, we are asking that the plan be refunded, and these trustees carry directors and officers insurance that we are seeking to recover. And if the plan gets refunded, then the benefits can be adjusted again. And so... But they don't need to be? They don't need to be. Judge Miller? Well, I think I was going to ask essentially the same question. Given that they don't need to be, the one prong of the standing analysis is redressability. And so, if getting the ultimate relief that you want, which is an increase in benefits, depends on sort of the independent judgment of the trustees, and then you're not asking us to compel them directly to increase benefits. So, isn't that a redressability problem for you? I don't believe it's a redressability problem. The plan will be refunded, and it's up to the trustees to determine what they will do with the benefits. However, I'm confident that if the plan is refunded because these participants filed a class action lawsuit and recovered the refunded, that they will... It's also clear that this kind of multi-employer plan, although it's considered a defined benefit plan, is much more dependent on the amount of money in the plan than the kind of scheme that they were discussing in Seoul. Because Seoul was a single employer plan, which was being funded by a single employer, who, for example, as they say, could have gotten any surplus. That wouldn't be true here. And was also responsible for any shortfall, which also wasn't true. So, it is a different scheme for a different reason than what we were talking about. Does that matter for any reason? Your Honor, I think the three differences I pointed out are the most significant ones, but I also agree that it is a different type of plan. A single employer plan, as you mentioned, they would get the surplus. And so, I think that is also a distinction, but I believe the three I was trying to point out are the most important. All right. Well, I interrupted you and said to go to standing. You can now go off standing if you like and talk about the limitations period. Okay. I think that is the key, Your Honor, because of the limit of my time, I'm probably not going to have a chance to talk about the district court's finding that the claims did not plausibly allege a breach of fiduciary duty. But those findings were largely based on the court's conclusion that these time-based defenses rendered the claims time-barred. And as I was saying about what our complaint alleges, that there are 17 types of claims that are continuing violations that relate to things that have been done since 2009 all the way through 2017. Don't all of those claims ultimately depend on the idea that it was improper to eliminate the asserted invalidity of that change in 2009? Everything they've done since then would be fine, right? All of it ties back to that. You're correct. And I think what troubles me is it isn't so clear to me everything they did since then would have been fine, but you haven't alleged otherwise. The way you've alleged everything depends upon it being on the continuing resistance of the UVB prohibition. That's correct, Your Honor. I said the crux of our case. You might think that running up all this unfunded liability and having to cut benefits back and so on might be its own problem, but that's not the way you're alleging. That's correct. That's not what our case is about. Now, therefore, the question is, if you have, if you ordinarily, once a limitation is carried in this instance, a gesture of repose period runs, the situation before that period remains as if, as was, i.e., with the removal of that actual prohibition, it wasn't that much of a change in bring a procedural problem with regard to what was done from then forward. So why can you do it here? Usually, I mean, that's what a limitations period is. It leaves the situation unchallenged and unchallengeable. The situation in this instance being whether you have a valid change in the agreement. Well, there's three different levels where we thought that ruling was wrong, but to start at the back where you're asking, we believe the court was wrong because of this court's precedent under Meagher, which directly held that a time-based defense cannot somehow make a case. I think that's your best case, and I think that's a fairly strong argument. But the difference, of course, is that what you had in Meagher was a prohibition that related directly to the payment of benefits. So until the benefits were paid, and this compliance had to be in place at the time the benefits were paid. This is not a scheme about benefits. It's a scheme about investment, right? It is, Your Honor, but I don't think that's a distinction without a difference because I don't see how, because a statute of repose runs, that magically transforms an improper amendment into something proper. I don't think that's how the statute of repose works, and I think that it was wrong on levels other than that because it mixed up the statute of limitations and the statute of repose, and it used underlying violations, which is something from the Ziegler and Murata cases, which are statute of limitation cases, and the defendant has conceded that the That seems to me to be a fairly direct point in terms of what it's looking at the continued existence of an invalid amendment, right? Right, but I disagree with that. I don't agree with that because in Ziegler, you are dealing with a statute of limitations where you seem to run the other direction. It matters to this question because we are alleging that they are continuing violations, so you look at when the last culpable act of the defendant occurred. In the Ziegler case, you're looking at whether the plaintiff's acts were timely and whether it happened within three years of the underlying violation. For a statute of repose, you're saying anything six years after the last culpable act is barred, and that's different than what we have here, and I see my time is up. Okay, thank you very much. I'll give you a couple minutes. Thank you. Thank you. May it please the court. I'd like to start with the threshold issue of standing. There's a fatal disconnect between Fisher's theory of liability on the one hand and his theory of injury on the other, and this disconnect really infects all of his arguments. No, I think there's a disconnect between your arguments also because your argument seems to be that there's no way to ever sue on this because at the time you can sue, i.e. within six years, there's no, what you would say is an actual injury, and when there is an actual injury, you can't sue because it's barred. Well, when I refer to the disconnect, what I'm referring to is... I'm going to give you a disconnect. I find the whole thing extremely bizarre. If you notice, Ziegler, which supports you on the limitations period, is adamant about the fact that you don't have to have an injury in order to bring this fiduciary case. If you do have to have an injury in order to bring the fiduciary case, and Congress obviously thought so, that you didn't, then you're left with a statutory scheme that you can't, there's no way to enforce the requirement. I think that's, with respect to the statute of repose, that's how the statute of repose works. In the Supreme Court case, the CTS case, it recognized that there may not be an injury. Your position is they couldn't sue within the six years either. Our position with respect to Article III standing is that he hasn't identified a legally protected interest that's been invaded. Therefore, he couldn't sue within the six years and he couldn't sue outside the six years. And because he couldn't sue outside of the six years because there's a statute of repose. And the Supreme Court's recognized that even if an injury, the injury may not have even occurred when the statute of repose has lapsed. And so that doesn't mean that there's not an Article III requirement with respect to an injury in fact. The Thole case is really on point with this one because in Thole, what the Supreme Court recognized is that participants in defined benefit plans, they don't have an underlying protected equitable interest in the trust asset. They do have an interest in their already accrued benefits. The problem for the plaintiff... But in the Thole case, he does allege that there were two cuts in his, including within the six years, in his benefits. Right. Prospective benefits. Prospective benefits. And that's a critical difference because in Thole, we're talking about already accrued benefits. Those are the guaranteed benefits that you have to pay a participant under a defined benefit plan. When it comes to the prospective accrual of future benefits, trustees always remain free to modify those benefits. That's what the Hughes case stands for. There's simply no legally protected interest in a continued rate of accrual. And because there's no legal entitlement there, there can't be an invasion of that entitlement. These trustees are always... They always have the right to modify prospective accruals of future benefits. There's simply no protection under ERISA for that. What they can't touch is the already accrued benefits. And Mr. Fisher doesn't claim that his already accrued benefits have been addressed or that they're imminently going to be reduced in any way. So he's in the same position as the plaintiffs in Thole. And even apart from that, even if he had a cognizable injury here, he has a redressability problem. This court's decision, and I think is directly on point, is called Glanton v. Advance PCS. And it's at F-3rd... I'm sorry, 465 F-3rd 1123. That's from 2006. So in Fisher's case, again, here's the disconnect. He's claiming he was injured by these amendments, but he is not challenging the legality of those amendments. He disavows any challenge to the amendments. He tried to challenge them in the district court in the First Amendment complaint. He lost on that theory, and he's abandoned that. He's not asking the court to set aside the amendments. Instead, he's asking the court to award money to the trust based upon other conduct, but he would not share in that recovery. So that's why he's arguing, well, if the trustees... Well, he probably would share in that. In all likelihood, he would share in the recovery because if they had all this extra money, why wouldn't they pay? You see, again, this is different than a single employer plan in the sense that there is no incentive for the trustees of this plan to keep the money and do nothing with it because they're not going to get the money. The employers are not going to get the money. So that's a key difference between what the court was assuming in this case, and maybe enough for addressing more stability. So I don't think it is, Your Honor, respectfully, because here, what Fisher's presuming is that if the trustees were ordered to pay off the unfunded vested benefit liability, then we would have no UVB, and he assumes that the trustees would then make the independent judgment to reverse the prior amendments. But nothing would legally require them to do that. And this court's decision, as I just mentioned in Glanton, rejected the same type of argument. Their participants in a prescription drug plan sued the fiduciary, saying, you were overcharging the plan for prescription drugs, and if you hadn't, our co-pays would have been lower. This court looked... Excuse me, that was a medical plan, which doesn't have the same kind of vestigial wounds. I agree that the plan was different, but I don't think that makes any difference for Article III purposes because what the court was explaining is that even if we award this relief to the plan, it doesn't mean that the plan sponsors will necessarily turn around and reduce the co-pay requirements. There'd be no legal requirement to do so. They might use that extra money to reduce employer contributions to the plan. The same analysis applies here because there's no guarantee the trustees would unwind the benefits. They'd have every incentive not to. For one thing, if they unwind the benefits, if UVB is zero today, there's no unfunded vested benefit liability today, and tomorrow they retroactively undo those prior amendments, now you're increasing vested benefit liability and you've automatically incurred more UVB. So if Fisher's right about how that trust agreement provision works, there would be every incentive not to touch those prior amendments because we want to avoid incurring more UVB liability. So that money to the plan would go to the trust and there wouldn't be any incentive to reduce, to unwind those amendments. There might be some incentive to create a reserve. There might be some incentive to increase the contribution levels or reduce the contribution levels of employers because that was something that the 2011 and 2018 amendments required. Under those amendments, employers had to increase contributions. There's all sorts of things the trustees might do with that money and it's purely speculative for Mr. Fisher to assume that they would necessarily unwind these past benefits when the risk of doing that is creating more unfunded vested benefit liability and subjecting themselves to more liability. So we think it's just far too speculative and that this court's analysis in Glanton precludes the redressability argument that Mr. Fisher is making. With respect to the repose argument, Mr. Larson's acknowledged that this all goes back to the action taken in 2009. And so every claim he's making is either a direct or indirect attack on that alleged fiduciary breach of changing the UVB provision in the 1982 trust agreement. Take that away and all of his claims evaporate. The district court recognized that and under this court's precedence in applying the limitations period in section 1113, the first step is to isolate the underlying breach. We all agree that the under... All about the Mike May case and Mike Meagher case. It does say definitively that the... But it says that if you have a improper change that it basically never goes into effect. The Meagher case, Your Honor, yes. And so two thoughts, two things on that. First of all, Meagher in making that comment was it was not part of the limitations analysis. And what it was recognizing is that in the context of this particular type of amendment, before it can take effect, the statute requires that it be signed off on by the Secretary of Labor. And the statute says the amendment shall not take effect. The court didn't say that when there's an ordinary violation of a trust agreement's amendment procedure, necessarily that amendment never takes effect. And it certainly didn't say that this would effectively suspend the statute of proposed so that you could always challenge the validity of a plan amendment six years from now, 60 years from now, so long as the fiduciaries are still abiding by that allegedly invalid amendment. That would completely swallow the statute of proposed. We don't think that's what Meagher intended to do. What Meagher focused on, in the same way that Ziegler did, was the underlying breach. The amendment itself wasn't a legal violation, so it could not trigger the statute of proposed. The application of that amendment in a particular way to reduce accrued benefits was a violation, so that's what triggered it. Here, we all agree that the underlying breach is the amendment of the trust provision in 2009. So that is the underlying breach. It, the clock began to tick, and in 2015, his claims expired under the statute of proposed. And all of the arguments to the contrary are a little more than arguments that as long as the fiduciaries are still following the trust provision, then your time limit to file suit never even begins to run, and it never expires. That's completely contrary to the legislative purpose behind a statute of proposed. So we don't think that's workable. The argument that, well, this is a continuing violation, is really an argument based upon TIBL. And in TIBL, the Supreme Court was construing the very unique duty to monitor investments under ERISA. Now, that duty, by its very nature, is ongoing, it's continuing. Because when a trustee puts an investment in a plan, what's reasonable today might not be reasonable six months from now, or 16 years from now. The trustee has to continue to monitor that fluid asset. Not so when it comes to an amendment. An amendment is a discreet act. And there's no continuing duty that Mr. Fisher has identified, or that we've seen in the precedent, that would require a trustee six years, 16, 60 years after an amendment is passed, to constantly reevaluate the provenance and propriety of all these amendments to make sure that they're still good provisions. If that were the case, there would be no statute proposed for these types of claims. So the TIBL case is just fundamentally distinguishable, and we're not aware of any authority for the type of continuing violation theory that Mr. Larson is advancing here. Your Honor, I just want to say with respect to plausibility, that we have explained in our papers why we believe that even if there is Article III standing, and even if the claims were timely, which we think neither applies, the allegations that were offered were far too conclusory and without factual basis to support a plausible theory. Unless there are any further questions, I would simply assert that Mr. Fisher does not have Article III standing to pursue these claims. In any event, he waited three years too long to file suit, and the allegations in the complaint are implausible. And for any of these reasons, or all of these reasons, we think that dismissal below should be affirmed. So, just to put together where I started. Is there any way, even within the Dash River Post period, or after, that a lawsuit could have been brought regarding the improper, if it wasn't proper, amendment? I gather your position would be that there was no Article III standing to bring it within the six-year period because there's been no impact yet, and there still isn't, but there might be in the future, but then it will be too late. I mean, that's where we are, right? I think that the Statute of the Dash River Post and the constitutional requirements of Article III make it difficult for a participant to bring this claim, but I would hasten to add that the trustees themselves can assert claims. They are responsible as co-fiduciaries. If a new trustee came into the plan a few years after that amendment and felt that there was a problem with it, they could bring a claim under ERISA and ask for relief to correct that error if they believed that there was one. So it's not as though this issue could never be addressed if there was a violation in the first place. It's just that the Article III requirements that exist for a case in controversy require the litigant here, Mr. Fisher, who had suffered some invasion of a legally protected interest, which he hasn't, that would be redressed by a favorable outcome, which Mr. Larson's theory of relief simply wouldn't do, at least not without engaging in the type of speculation that the redressability requirement does not permit. Okay, thank you very much. Thank you. Yes, you may have a minute in the panel, and we will take a break after this. Thank you, Your Honor. I just have two points to make. Mr. Boren suggests that we acknowledge that this whole case comes down to the amendment claim. That's not correct. We are alleging that since 1982, there has been a no UVB provision. The trustees and the district courts somehow conclude that, wait, this has been amended. That is not what the complaint says. That is what their judicially noticed provisions, which are their documents, that we think is telling a different story, and we object to that because the court assumed facts. I thought your complaint does say that there was an attempt to amend it, but it was an invalid attempt, you say. And even the complaint acknowledged that it was nonetheless treated as having been amended during that time period, after that. We do allege that. That's correct, Your Honor. But what else is needed to fill the hole what, and you say that all of your productionary arguments depend on that plan not having been, the amendment not being in effect. I think the distinction is, you're starting from the premise that the amendments might have been effective, and the complaint alleges that the amendments weren't there. The plan said no UVB, and the judicial notice of documents creates this issue about, well, maybe it was amended. But we allege that there was an improper amendment, but we never alleged that it was an amendment. And so that's my point. And my final point is that this court said in the Batchelor case that the whole point of these ERISA statutes are to benefit the participants. And if this court were to hold somehow that participants do not have a claim because they don't have standing, how is that doing something in the interest of the participants? That will deny all participants remedies in the future. And so we ask that you reverse the district court and allow us the opportunity to do discovery, see if we have a claim, and then under the proper standard, determine whether this case can go to the trial. That's all I have. Okay. Thank you both very much for your argument. Fisher v. Cetutano was submitted, and we will take a short break. Thank you.
judges: Berzon, Miller, Bress